FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 22, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEVIN O.,[1]<br><br>                 Plaintiff,<br><br>      v.<br><br>CAROLYN COLVIN, Acting Commissioner of Social Security,<br><br>                 Defendant. | No.   4:24-cv-5072-EFS<br><br>**ORDER RULING ON CROSS MOTIONS FOR REMAND AND REMANDING FOR CALCULATION OF BENEFITS** |

Plaintiff Kevin O. appeals the denial of benefits by the Administrative Law Judge (ALJ). The parties agree the ALJ erred in his five-step evaluation, but the parties disagree about the appropriate remedy. After reviewing the record and relevant authority, the Court remands the case for calculation of benefits.

/

---

[1] To address privacy concerns, the Court refers to Plaintiff by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS MOTIONS TO REMAND - 1

## I.    Background

Plaintiff alleges disability due to Klinefelter syndrome; attention-deficit/hyperactivity disorder (ADHD); fetal alcohol syndrome; diabetes; peripheral neuropathy; bilateral myopia and astigmatism; decreased visual field in the right eye; borderline intellectual function; persistent depressive disorder; generalized anxiety disorder; schizoaffective disorder; and polysubstance use disorder.

Due to his physical and mental impairments noted above, Plaintiff protectively filed for supplemental security income benefits on February 24, 2016,[2] alleging an onset date of February 9, 1991.[3] Plaintiff's claims were denied at the initial and reconsideration levels, and Plaintiff requested an ALJ hearing.[4] On November 1, 2018, Plaintiff appeared with his attorney for a hearing before ALJ Lori Freund.[5] On June 28, 2019, ALJ Freund held a supplemental hearing.[6] At the supplemental hearing, Plaintiff amended his alleged onset date to coincide with the application date of February 24, 2016.[7] On December 6, 2019, ALJ Freund issued

---

[2] AR 323-324, 202-205. Plaintiff also filed a claim for benefits under Title 2 but it was denied due to lack of required work credits.

[3] AR 326-340, 353.

[4] AR 206, 220, 231.

[5] AR 74-119.

[6] AR 120-149.

[7] AR 17.

an unfavorable decision, denying Plaintiff's claim.[8] Plaintiff requested review, and the Appeals Council denied review on July 7, 2020.[9] Plaintiff filed suit in this Court, and on February 9, 2022, this Court entered an order remanding the case to the Commissioner for further proceedings on the stipulated motion of the parties.[10]

On October 20, 2022, Plaintiff appeared by telephone with his attorney for a hearing before ALJ Freund.[11] On January 27, 2023, ALJ Freund issued a second unfavorable decision denying Plaintiff's claim.[12] On July 23, 2023, the Appeals Council remanded the case for further proceedings, noting that ALJ Freund erred at step two by not explaining her findings regarding Plaintiff's mental impairments.[13]

On February 8, 2024, Plaintiff appeared via telephone with his attorney for a hearing before ALJ Stewart Stallings.[14] Plaintiff testified and a vocational expert

---

[8] AR 14-38.

[9] AR 1-6.

[10] AR 793-798.

[11] AR 661-718.

[12] AR 809-838.

[13] AR 839-847.

[14] AR 714-758.

ORDER RULING ON CROSS MOTIONS TO REMAND - 3

testified.[15] On April 19, 2024, the ALJ issued a decision denying Plaintiff's claim.[16] Plaintiff then filed this action.

ALJ Stallings found:

- Step one: Plaintiff had not engaged in substantial gainful activity since the application date of February 24, 2016.

- Step two: Plaintiff had the following medically determinable severe impairments: type 1 diabetes mellitus; peripheral neuropathy; Klinefelter syndrome; bilateral myopia and astigmatism; decreased visual field in the right eye; ADHD; borderline intellectual function (BIF); persistent depressive disorder; generalized anxiety disorder; schizoaffective disorder; and polysubstance abuse disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Specifically, the ALJ noted that he considered Listings 11.14, 2.02, 12.03, 12.04, 12.06, 12.08, and 12.11.

- RFC: Plaintiff had the RFC to perform light work except that:

    He can lift and carry 20 pounds occasionally and 10 pounds frequently, sit for approximately six hours in an eight-hour workday, and can stand or walk for approximately six hours in an eight-hour workday. He requires a sit/stand option, defined as changing from a standing position to a sitting position approximately every 30 minutes for about five minutes while

---

[15] Id.

[16] AR 629-660.

ORDER RULING ON CROSS MOTIONS TO REMAND - 4

> remaining at the workstation. He cannot use foot control operations. He can never climb ladders, ropes, or scaffolds, and he can rarely— defined as 15 percent of the time or less—climb stairs. He can rarely stoop, and he cannot crouch, kneel, or crawl. He can frequently perform handling and fingering. He needs to avoid all use of moving or dangerous machinery, exposure to unprotected heights, and exposure to bright sunshine and flashing lights. He can use computer monitors. He is limited to occasional far acuity and peripheral acuity. He is limited to simple, routine, repetitive tasks; no production pace, conveyor belt (non-worker controlled pace); a predictable work environment; and no interaction with the public. He can work around co-workers but can have only occasional interaction with them. He can have occasional interaction with supervisors.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a routing clerk (DOT No. 222.687-022); an office helper (DOT No. 239.567-010); and a mailroom clerk (DOT 209.687-026).[17]

ALJ Stallings also considered the medical opinion evidence and articulated the following as to his findings:

- The opinions of consultative examiner James Opara, MD, were given little weight.

- The opinions of consultative examiner William Drenguis, MD, were given little weight.

---

[17] AR 635-650.

ORDER RULING ON CROSS MOTIONS TO REMAND - 5

- The opinions of non-examining state agency consultant Normal Staley, MD, were given little weight.
- The opinions of treating source Brooks Watson, MD, was not assigned weight but was found to be inconsistent with his examinations and the medical evidence showing intact strength, range of motion and neurological function.
- The opinions of consultative examiner Marquetta Washington, ARNP, were given little weight.
- The opinions of consultative examiner Alexander Patterson, PsyD, were given "some" weight.
    o The opinions of non-examining state agency consultants Vincent Gollogly, PhD, and Christmas Covell, PhD, were given significant weight.
- The opinions of consultative examiner Philip Barnard, PhD, were given little weight.
- The opinions of consultative examiner N.K. Marks, PhD, were given little weight.
- The opinions of non-examining psychologist Ellen Rozenfeld, PsyD, were given significant weight.
- The opinions of David Oni, NP, who is an "other" medical source pursuant to the applicable rules, were given "some" weight.

- The opinion of non-examining medical advisor David Peterson, PhD, that Plaintiff had a marked limitation in adapting and managing himself was given no weight; but the remainder of Dr. Peterson's opinions were given significant weight.[18]

Plaintiff now appeals ALJ Stallings' denial of disability and asks for an immediate award of benefits.[19] The Commissioner concedes the ALJ erred when evaluating the medical expert opinions, but the Commissioner asks the Court to remand the matter for further administrative proceedings because there are evidentiary conflicts that must be resolved by the ALJ.[20] Plaintiff avers that because the Commissioner did not address his remaining arguments, he has waived any opposition to Plaintiff's arguments.[21]

## II. Analysis

### A. Remand Standard

When a harmful error occurs in the administrative proceeding, remand for further administrative proceedings is the usual course absent rare circumstances.[22]

---

[18] AR 644-648.

[19] ECF Nos. 1, 10.

[20] ECF No. 22.

[21] ECF No. 11.

[22] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

ORDER RULING ON CROSS MOTIONS TO REMAND - 7

Three factors must be satisfied for the court to consider remand for payment of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[23]

When these factors are satisfied, the decision whether to remand for benefits or further proceedings is within the court's discretion, as it "is a fact-bound determination that arises in an infinite variety of contexts."[24]

**B.    Remand Analysis – Medical Opinion Evidence**

The parties agree the second factor is satisfied: the ALJ erred in evaluating the medical opinion evidence. Specifically, the parties agree that the ALJ erred in his consideration of the opinions of Dr. Patterson.

1. <u>Legal Standard</u>

When Plaintiff filed his initial disability application, medical opinions were to be assessed based on the nature of the medical relationship the claimant had with the medical provider. When a treating physician's or evaluating physician's opinion is not contradicted by another physician's opinion, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected

---

[24] *Id.* at 1100 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000)).

for "specific and legitimate reasons" supported by substantial evidence.[25] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[26] may be rejected for specific and germane reasons supported by substantial evidence.[27]

---

[25] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

[26] *See* 20 C.F.R. § 404.1502 (defining who is an acceptable medical source for claims filed before March 27, 2017).

[27] *Molina*, 674 F.3d at 1111. The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

ORDER RULING ON CROSS MOTIONS TO REMAND - 9

### 2. The ALJ's Findings

The ALJ articulated the following reasoning as to his consideration of Dr. Patterson's opinions:

> Based on the June 2016 consultative examination, Dr. Patterson expressed the opinion that the claimant's reasoning and judgment were "mildly impaired due to a personality disorder." He opined that the claimant's understanding and memory were normal, that his sustained concentration and persistence were mildly impaired due to amotivation, that his interpersonal functioning was moderately to severely impaired due to a personality disorder, and that his adaptation skills were moderately impaired due to poor insight and coping skills. Dr. Patterson opined that the claimant's functional capacity in the work setting appeared to be "moderately to severely impaired due to emotional lability, attention/concentration difficulties, and personality pathology." He opined that the claimant "may have difficulty" with attendance and punctuality, completing work tasks, and establishing and maintaining relationships with coworkers, supervisors, and the public due to interpersonal deficits. Finally, Dr. Patterson opined that the claimant's ability to manage normal work stress appeared to be moderately to severely impaired (Ex. C5F/5). This opinion is given only some weight. It is based on Dr. Patterson's findings, which included deficits in memory, concentration, and abstract reasoning (Ex. C5F/3-4). The assessment of mental limitations is consistent with the symptoms the claimant reported to his own providers and to other independent doctors and is also consistent with other doctors' findings of psychotic thought content, depressed or anxious mood, and limited insight (Ex. C28F/10; C30F/8; C31F/1). However, Dr. Patterson's opinion is vague. He did not describe the claimant's specific limitations in vocational terms, and his opinion that the claimant "may have" difficulties in several different areas is speculative.[28]

### 3. The Parties' Arguments

Plaintiff argues that the case should be remanded for an award of benefits. The Commissioner argues that the case should be remanded for further proceedings because "the record as a whole creates serious doubt as to whether

ORDER RULING ON CROSS MOTIONS TO REMAND - 10

[Plaintiff] is, in fact, disabled."[29] In support of this assertion the Commissioner argues that:

> For example, although Plaintiff alleged disability due a variety of impairments, including paranoia and problems with concentration (Tr. 640), examinations showed unremarkable behavior and no difficulty with attention or concentration (Tr. 571, 1645). Plaintiff claimed his symptoms were so limiting that he could not work, but he helped a roommate by doing outdoor lawn work and supported himself by performing "odd jobs." Tr. 471, 476. He even told a counselor that "the only reason he is here [for counseling] is so he can get money via the ABD program for an apartment until his Social Security comes through." Tr. 1665-66.[30]

4. <u>Analysis</u>

Initially, the Court notes that the ALJ's evaluation of the medical opinions in general is deficient and fails to apply the "old regulations" properly. It is notable that the ALJ has given significant weight to the opinions of non-examining or treating sources while finding the opinions of the treating sources to be entitled to little weight. Moreover, there is no indication that the ALJ considered the treatment nature of any of the sources or the specialization of any of the sources. For instance, there is no indication that the ALJ considered the length of Dr. Watson's treatment of Plaintiff, or that he considered that Dr. Watson is a

---

[28] AR 645-646.

[29] ECF No. 22, pg. 5.

[30] ECF No. 22, pg. 5-6.

Case 4:24-cv-05072-EFS    ECF No. 23    filed 01/22/25    PageID.1863    Page 12 of 17

board-certified internist with specialized expertise in treating diabetes.[31]

With regard to the medical opinions from examining psychiatric sources such as Dr. Patterson, there is no indication that the ALJ considered the consistency of the opinions that Plaintiff suffered from marked impairments in various areas.

The Commissioner fails to offer any specific issue or conflict in the record that must be reconciled.  Rather, the Commissioner offers a vague and non-specific argument that the medical evidence shows that Plaintiff might not be disabled and cites to three instances in the record in support of that contention.  But the three instances cited to in the record fail to support the Commissioner's argument.

The Commissioner's argument that Plaintiff told a counselor that he was only attending counseling to get an apartment until his social security was approved is not a fact that the ALJ considered in his decision.  The Commissioner's attempts to raise the issue in her brief constitutes a post hoc rationalization on the Commissioner's part.  Even so, the Commissioner's citation to the record in question is factually incorrect and taken out of context.

The facts of the cited reference are that on February 15, 2022, Plaintiff presented to Lourdes Counseling Center on the referral of DSHS program that

---

[31] Dr. Brooks Watson, MD | Kennewick, WA | Internist | US News Doctors. www.health.usnews.com (last viewed January 16, 2025.)

ORDER RULING ON CROSS MOTIONS TO REMAND - 12

required him to be in therapy.[32] Plaintiff stated that he was last examined in 2020 when he was involuntarily hospitalized for 3 months and diagnosed as schizophrenic but ultimately found capable of standing trial for assault.[33] Plaintiff stated that the only reason he was attending counseling was because it was required for him to get housing under a housing program and that he had been in counseling since he was 7 years old and it had never helped him so he did not believe it would help him now.[34] Plaintiff's record also indicated that in 2011 he had been given the rule-out diagnoses of: bipolar disorder, psychosis, intermittent explosive disorder, and a personality disorder.[35] There is no inference that the examiner thought that Plaintiff was not disabled, nor was Plaintiff being duplicitous in attending therapy, but rather he was expressing that he had been in treatment since he was 7 years old so he did not think additional treatment would help him but was forced to be there due to housing program regulations. If anything, the cited medical record supports Plaintiff's allegations to the extent that the documented history and complaints are consistent with the record in general and with Plaintiff's allegations.

---

[32] AR 1665.

[33] Id.

[34] AR 1665-1666.

[35] AR 1666.

The other two medical records cited by the Commissioner are equally unsupportive of her assertions. As noted, the Commissioner asserts that treatment record from two appointments for physical examinations revealed "normal behavior and no difficulty with concentration or attention."[36] But this is erroneous.

The treatment record cited to at AR 571 pertains to an appointment at which Plaintiff presented to TriCities Healthcare on April 16, 2019, for diabetes management and was assessed with A1C of 11.1.[37] On physical examination Plaintiff was noted to be oriented to time, place, and person.[38] Plaintiff was urged to being treated with insulin and to comply with diabetes management.[39] There was no mention of normal behavior or any psychological finding beyond the fact that Plaintiff was not overtly psychotic at the time of the appointment and was aware of his surroundings. This does not support an argument that Plaintiff was "not disabled."

The third and last treatment note cited to by the Commissioner pertains to the January 1, 2022 appointment at which Plaintiff presented to David Oni, NP, for a psychiatric evaluation.[40] He reported that he had been hospitalized

---

[36] ECF No. 22, pg. 5.

[37] AR 570.

[38] AR 571.

[39] AR 572.

[40] AR 1641.

ORDER RULING ON CROSS MOTIONS TO REMAND - 14

psychiatrically 2-5 times and had more than 10 suicide attempts.[41] He reported poor ability to get along with others and a history of less than a high school education due to poor grades.[42] On mental status examination, Plaintiff was inappropriately dressed and poorly groomed; he had normal speech, mood, affect and thought content; he had no difficulty with concentration and attention; he was oriented; he could not tell how many eggs were in a dozen, make change from a $6.50 purchase, or tell how many quarters are in $2.25; he could not perform serial threes or sevens and could only complete 2 steps of a 3-step instruction; and he was unable to think abstractly.[43] He was diagnosed with ADHD, anxiety disorder, and major depressive disorder, moderate.[44] NP Oni opined that abstract thinking, concentration, and judgment were "somewhat limited."[45] The Court cannot conclude that a treatment note indicating that the Plaintiff presented in a disheveled state and had limited judgment and concentration was a clear indication that he was "not disabled" as Commissioner argues.

The record, viewed as a whole, supports a finding that each of the examining psychiatric sources found Plaintiff to have a marked impairment in his functioning.

---

[41] AR 1644.

[42] Id.

[43] AR 1645-1646.

[44] AR 1646.

[45] AR 1647.

The old regulations apply in this matter, and those examining opinions are deemed to be entitled to greater weight than those of the non-examining state agency consultants absent clear and convincing evidence, which the Commissioner has not shown. The Court concludes that there is not sufficient reason to warrant further proceedings. Although the Court remands for benefits squarely on the basis of the analysis set forth above, the Court also notes that Plaintiff's application was filed more than eight years ago and that there have been three separate hearings on this matter, each of which has resulted in a remand stipulated to by the Commissioner at some level for error conceded to by the Commissioner. Rather than affording the Commissioner a fourth "bite at the apple," the Court remands for calculation of benefits.

### III.    Conclusion

Remand for an award of benefits is appropriate. This record is well-developed and a number of examining sources have opined as to disabling limitations. Given the fact that the old regulations apply, and those opinions are presumptively entitled to weight absent clear and convincing evidence otherwise, which the Commissioner has not shown, there is no useful purpose in remanding for furthering proceedings.[46]

---

[46] *See Vasquez v. Astrue*, 572 F.3d 586, 593–94 (9th Cir. 2009).

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Remand for Calculation of Benefits, **ECF No. 10**, is **GRANTED**.

2. The Commissioner's Motion for Remand for Further Proceedings, **ECF No. 22**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits from the alleged disability onset date.

4. The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

**DATED** this 22nd day of January 2025.

_Edward F. Shea_
EDWARD F. SHEA
Senior United States District Judge